Mark James BITTAKIS, Plaintiff,

v.

The CITY OF EL PASO, County of El Paso, El Paso Police Officers Krandell Chew, Laura Canonizado, J. Nevarez, Raul Prieto, District Attorney Jaime Esparza, and Assistant District Attorney Lisa Clausen, Defendants.

No. EP–05–0402–FM.

United States District Court,
W.D. Texas,
El Paso Division.

March 13, 2007.

900

Michael R. (Mickey) Milligan, Attorney at Law, Sam Snoddy, Law Office, El Paso, TX, for Plaintiff.

Jennifer F. Callan, El Paso City Attorney's Office, Kitty Schild, El Paso County Assistant Attorney, Duane A. Baker, Attorney at Law, Jo Anne Bernal, Office of the County Attorney, El Paso, TX, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

MONTALVO, District Judge.

On this day, the Court considered "Defendants' Motion for Summary Judgment" ("Officers' Motion for Summary Judgment") [Rec. No. 90]; "Appendix of Material and Disputed Facts in Support of Defendants' Motion for Summary Judgment" [Rec. No. 91]; "Plaintiff Bittakis' Response to Defendant's Motion for Summary Judgment" ("Plaintiff's Response to Officers' Motion for Summary Judgment") [Rec. No. 97]; "Defendants' County of El Paso and Jaime Esparza, In his Official and Individual Capacity, Amended Motion to Dismiss, or in the Alternative, Motion for

Summary Judgment" ("County's Motion for Summary Judgment") [Rec. No. 121]; "Plaintiff's Response to Defendants' County of El Paso and Jaime Esparza, In his Official Capacity and Individual Capacity, Amended Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" ("Plaintiff's Response to County's Motion for Summary Judgment") [Rec. No. 141]; "Defendant City of El Paso's Motion for Summary Judgment" ("City's Motion for Summary Judgment") [Rec. No. 124]; "Appendix of Material and Disputed Facts in Support of Defendant City of El Paso's Motion for Summary Judgment" [Rec. No. 125]; "Plaintiff's Response to Defendant City of El Paso's Motion for Summary Judgment" ("Plaintiff's Response to City's Motion for Summary Judgment") [Rec. No. 135]; "City of El Paso's Reply to Plaintiff's Response to its Motion for Summary Judgment" ("City's Reply") [Rec. No. 136]; "City of El Paso's Objections to Plaintiff's Summary Judgment Evidence" ("City's Objections") [Rec. No. 137]; and "Plaintiff's Response to City of El Paso's Objections to Plaintiff's Summary Judgment Evidence" ("Plaintiff's Response to City's Objections") [Rec. No. 144]. After carefully considering the motions, responses, reply, case file, and applicable law, the Court finds that it should dismiss all of Plaintiff's claims against all Defendants.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Through the "First Amended Complaint of Mark James Bittakis, Application for Declaratory Judgment and Application for Injunctive Relief" [Rec. No. 2] ("Amended Complaint"), Plaintiff Mark James Bittakis ("Plaintiff") brings this action for relief for alleged violations of his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. Plaintiff also claims relief pursuant to 42 U.S.C. §§ 1985, 1986, and 1988, as well as 18 U.S.C. §§ 1961–1968. Defendants are the City of El Paso ("the City"), County of El Paso ("the County"), District Attorney Jaime Esparza ("Esparza"), Assistant District Attorney Lisa Clausen ("Clausen")[1], and El Paso Police Officers Krandell Chew ("Chew"), Laura Canonizado ("Canonizado"), Raul Prieto ("Prieto"), and J. Nevarez ("Nevarez") ("collectively, the officers"). Plaintiff also introduced a number of state claims against various defendants. Plaintiff additionally seeks a declaratory judgment holding the District Attorney Management System ("DIMS") agreement and manual illegal, unconstitutional, and void pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202. Further, Plaintiff asks the Court to permanently enjoin the City, County, and Esparza from utilizing DIMS.

### A. Plaintiff's Factual Assertions

In his Amended Complaint, Plaintiff contends that on January 30, 2005, he was scheduled to depart the El Paso Airport after performing work at Holloman Air Force Base. Plaintiff, a Florida resident, was a contractor working at the United States Elgin Air Force Base in Florida. At the El Paso Airport, a Transportation Security Administration ("TSA") inspector examined Plaintiff's luggage and found a ziplock container. Inside the container were two small sandwich-type bags filled with a white powdery substance. TSA officials subsequently summoned El Paso Police Department officers to the airport. Officer Chew responded first and took possession of the white powdery substance. Officer Chew field-tested the substance

---

1. In the "Memorandum Opinion and Order Granting Defendant Lisa Clausen's Motion to Dismiss" [Rec. No. 106] dated September 29, 2006, this Court dismissed Defendant Clausen from this case on the basis of prosecutorial immunity.

twice. Each time, the substance tested positive for cocaine. The officers advised Plaintiff of the test results. Plaintiff claimed that the white powdery substance was laundry detergent. If there was cocaine in his luggage, Plaintiff maintained someone had planted it there.

El Paso Police Department officers arrested Plaintiff for possession of cocaine. The responding officers next called the District Attorney's Information Management System ("DIMS")[2] attorney on duty, whom Plaintiff alleges was Clausen. After the El Paso County District Attorney's Office ("DA's Office") accepted the case for prosecution, the officers transported Plaintiff to the El Paso County Detention Center. On the day following the arrest, January 31, 2005, Defendants claim Plaintiff

was taken before Magistrate James Carter, who advised Plaintiff of his rights, approved Plaintiff's bond, and determined it was appropriate to detain Plaintiff in jail.[3] Plaintiff describes the process of appearing before Judge Carter in the following manner:

> While several arrestees were waiting to be brought into court, a young lady, whose name Bittakis does not know, who was interviewing the inmates going into court, asked Bittakis if he had an attorney and he said that he did not. There was some discussion concerning the status of his finances and it became apparent that because of his salary, Bittakis made too much money to be afforded a court appointed attorney. Bittakis asked how he went about getting an

---

2. According to Plaintiff's Complaint, DIMS constitutes an inter-local agreement involving the City, County, EPPD, and District Attorney which allows prosecutors to screen warrantless arrest cases presented to them by peace officers. Under DIMS, the City pays the District Attorney's Office for making Assistant District Attorneys ("ADA") available at all times to advise EPPD officers when they arrest a person. The DIMS attorney on duty immediately makes a charging decision instead of the District Attorney's office making the charging decision weeks or months later. If the DIMS attorney accepts a case for prosecution, the arresting officer may file the case within 24 to 72 hours of the offense. An ADA sets bond over the telephone from a pre-set bond schedule created by the El Paso County Council of Judges.

If the arrestee pays the bond, the arrestee is released from custody and never appears before a magistrate. If the arrestee does not pay the bond, the arrestee appears before a magistrate, who makes an independent determination of probable cause to detain the arrestee. The Magistrate warns the arrestee and approves or modifies the previously-set bond at this hearing. According to the DIMS agreement, DIMS increases the criminal justice system's efficiency and effectiveness. Pl.'s Am. Compl., Rec. No. 2, ex. D.

Esparza recently requested the Texas Attorney General to render an opinion regarding DIMS' constitutionality. *See* Letter from

Hon. Jaime Esparza, District Att'y, 34th Judicial District, to Nancy Fuller, Chair, Opinion Committee, Office of the Attorney General of Texas, at 1 (Feb. 1, 2006), RQ–0439–GA. The Attorney General accordingly considered the following question: "Is it lawful for municipal police officers of the City of El Paso to set reasonable bail for both misdemeanor and felony arrestees pursuant to articles 17.05, 17.20, and 17.22 of the Code of Criminal Procedure, and for the Sheriff to accept such arrestees into the El Paso County Jail without the arrestee appearing before a magistrate for up to 24 hours in a misdemeanor case and for up to 48 hours in a felony case before the requirements of articles 14.06, 15.17, and 17.033 of the Code of Criminal Procedure must be satisfied?" *Id.* The Attorney General concluded that "[u]nder Code of Criminal Procedure article 17.20, a City of El Paso municipal police officer may set reasonable bail for defendants arrested on misdemeanor charges. And under article 17.22, a City of El Paso municipal police officer may set reasonable bail for defendants arrested on felony charges if no prosecution has yet been filed." Tex. Att'y Gen. Op. No. GA–457 (2006).

3. App. of Material and Disputed Facts in Support of Def. City of El Paso's Mot. for Summ. J., Rec. No. 125, Ex. C.

attorney and the female said that she was not allowed to recommend one or provide telephone numbers. She said that if nothing had "moved on the case" within two weeks she would get back to him. Bittakis protested that two weeks was a long time to spend in jail without an attorney, and she said she would check back again in a week and a half. Bittakis never heard from the young lady again. She said that there were usually attorneys in court and that more likely than not one would approach him and asked [sic] him if he need [sic] representation. That did not happen. Bittakis was herded into the courtroom along with a number of other inmates, most of who had apparently been arrested for misdemeanors. Bittakis sat there while the misdemeanor cases were adjudicated. When those cases had been heard, the judge mumbled something to the effect, "Mark Bittakis, you have been charged with a felony for possession of a controlled substance, ≥ 200G > 400G," and that was that. This was the first time Bittakis had been told what charges had been filed against him. No pleading innocent or guilty, no discussion of bail reduction, nothing. "Bittakis did not have the opportunity to say anything, or even stand up or appear before the bench". [sic] Bittakis basically just sat there while the magistrate mumbled. As he recalls, an attorney who may have been an assistant district attorney was present but said nothing. Bittakis was then taken back to his cell.[4]

The white powdery substance was subsequently sent to the Texas Department of Public Safety laboratory, where it tested negative for the presence of a controlled substance. Upon learning of the test results, the DA's Office declined to prosecute Plaintiff. Although it is not clear from the Complaint exactly how many days Plaintiff spent in jail, Plaintiff states that "[i]t was now the sixth day Bittakis had been in jail and he still had not been able to contact his family or an attorney."[5] The summary judgment evidence before the court suggests Bittakis was released on February 9, 2005.[6]

### B. Plaintiff's Legal Assertions

The gravamen of Plaintiff's Complaint against Defendants, to the best of the Court's understanding, is that the DIMS program denied Plaintiff his right to be taken before a magistrate judge for a probable cause hearing. That is, the DIMS program improperly enabled Clausen to make a "judicial determination" and set Plaintiff's bond, although Clausen was not a magistrate. That said, it is not clear from Plaintiff's 66–page Amended Complaint which causes of action he is alleging against each Defendant. Therefore, the Court construes Plaintiff's action as proceeding against all Defendants on all potential causes of action Plaintiff even briefly mentions in his Amended Complaint.[7]

The Court now summarizes those causes of action. Plaintiff sues the City, County, Esparza, and the officers, in their individu-

---

4. Pl.'s Am. Compl., Rec. No. 2, pp. 16–17.

5. Pl.'s Am. Compl., Rec. No. 2, p. 20.

6. See Def.s' County of El Paso and Jaime Esparza, In his Official and Individual Capacity, Amended Mot. to Dismiss, or in the Alternative, Mot. for Summ. J., Rec. No. 121, Ex. 5 (Bond Form dated February 9, 2005 and signed "Bittakis, Mark James").

7. While Plaintiff's Complaint is unclear, rambling, and difficult to interpret, the Court notes its duty to construe Plaintiff's pleadings as to "do substantial justice." See FED. R.CIV.P. 8(f). The Court has done its best to fulfill that duty.

al and official capacities, under 42 U.S.C. § 1983. He seeks redress under that statute for the Defendants' alleged violations of Plaintiff's First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights. To the extent Plaintiff seeks to hold Defendants liable under § 1985 and § 1986, the Court understands him to allege that, pursuant to DIMS, the City, County, Esparza, Assistant District Attorneys, and the El Paso Police Department conspired together in some way to obstruct justice by depriving Plaintiff of his constitutional rights. Plaintiff also seems to assert a claim under the Racketeer Influenced and Corrupt Organizations Act, arguing Defendants have somehow engaged in the conduct of an enterprise through a pattern of racketeering activity by utilizing DIMS. Turning to the state law claims, the Court understands Plaintiff to aver that Defendants intentionally and recklessly engaged in extreme and outrageous conduct which caused Plaintiff severe emotional distress. Finally, Plaintiff attempts to state a cause of action for "warrantless/false arrest and imprisonment" against all Defendants.

*C. Defendants' Motions to Dismiss*

All Defendants move the Court to dismiss all of Plaintiff's federal and state claims against them for failure to state a claim and lack of evidence supporting the asserted causes of action. The Officers and Esparza also move to dismiss Plaintiff's federal claims against them on the basis of qualified immunity. Esparza further moves to dismiss Plaintiff's claims on the ground of absolute prosecutorial immunity.

**II. Rules 12(b)(1), 12(b)(6) and 56 Standard for Dismissal**

*A. Federal Rule of Civil Procedure 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") allows a party to move to dismiss an action for lack of subject matter jurisdiction. The Court must dismiss a cause for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *See Home Builders Ass'n of Mississippi, Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir.1998). The Federal Rules provide that a defendant may submit a motion to dismiss for lack of subject matter jurisdiction before filing an answer. Fed.R.Civ.P. 12(b). The burden of establishing subject matter jurisdiction is on the party seeking to invoke it. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001). In deciding a motion to dismiss pursuant to Rule 12(b)(1), the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts, plus the Court's resolution of disputed facts. *Id.* A Rule 12(b)(1) motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of her claims which would entitle her to relief. *See Home Builders Ass'n of Mississippi, Inc.,* 143 F.3d at 1010.

*B. Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") permits dismissal of all or part of a complaint "for failure to state a claim upon which relief can be granted." A motion to dismiss for failure to state a claim under Rule 12(b)(6) is viewed with disfavor and is rarely granted. *Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997). In considering a motion to dismiss for failure to state a claim, a court must accept as true the well pleaded factual allegations and any reasonable inferences to be drawn from them. *Tuchman v. DSC Communications Corp.,* 14

F.3d 1061, 1067 (5th Cir.1994). Dismissal of a claim under Rule 12(b)(6) is not proper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In ruling on such a motion, a Court may not look beyond the face of the pleadings. *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir.1999). Finally, a court may dismiss a claim "if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir.1986).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when viewed in the light most favorable to the plaintiff and with every doubt resolved in the plaintiff's favor. *Lowrey,* 117 F.3d at 247. A plaintiff, however, must plead specific facts, and not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992).

### C. Federal Rule of Civil Procedure 56

Summary judgment is only proper where the non-movant cannot demonstrate a genuine issue of material fact. FED. R.CIV.P. 56(c). A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether to grant a motion for summary judgment, a Court should view all evidence and the inferences to be drawn therefrom "in the light most favorable to the party opposing the motion." *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). In addition, a court should accept as true all evidence submitted by the non-movant. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Finally, courts should refrain from weighing evidence or making credibility determinations. *Id.* at 150–51, 120 S.Ct. 2097.

### III. ANALYSIS

#### A. Plaintiff's Section 1983 Claims

##### 1. Title 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 [8] creates a private cause of action for violations of federal constitutional rights perpetrated by any person acting under color of state law. To state a cause of action under § 1983, a plaintiff cannot rely on any theory of vicarious liability or the doctrine of *respondeat superior* to hold a supervisory official liable. *Stewart v. Murphy,* 174 F.3d 530, 536 (5th Cir.1999). Further, a "plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards,* 51 F.3d 577, 583 (5th Cir.1995). "It is fundamental to our federal jurisprudence that state tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a federal right." *Nesmith v. Taylor,* 715 F.2d 194, 195 (5th Cir.1983).

---

8. Title 42 U.S.C. § 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

## 2. Plaintiff Has Failed to State A Claim under § 1983

■ To begin, the Court notes Plaintiff complains at great length about DIMS' alleged noncompliance with various Texas laws. However, state law violations do not form the basis of § 1983 liability. *See, e.g., Fields v. City of South Houston*, 922 F.2d 1183, 1189–91 (5th Cir.1991). Accordingly, the proper inquiry is whether Plaintiff's Complaint sets forth a violation of a right or rights recognized in the United States Constitution. In this regard, Plaintiff alleges:

> Defendants were acting under color of law ... and deprived the Plaintiff of rights secured to him by the Constitution of the United States, including, but not limited to, Plaintiff's:
>
> a. First Amendment right to freedom of expression;
>
> b. Fourth Amendment right to be free from unlawful searches and seizure of Plaintiff Bittakis;
>
> c. Sixth Amendment right to be informed of the charges filed against Plaintiff;
>
> d. Fifth and Fourteenth Amendments rights to due process of law; and
>
> e. Fourteenth Amendment rights to equal protection of the laws.[9]

Plaintiff generally refers to the federal constitutional violations, although it is unclear which factual assertions Plaintiff means to link to the respective alleged constitutional violations. While the Complaint is obscure and difficult to understand, the Court will attempt to decipher Plaintiff's lengthy allegations.[10]

■ As to the First Amendment, Plaintiff has failed to state a claim because he does not allege any facts stating a colorable claim for a First Amendment violation.[11] In the responses to the Defendants' motions to dismiss, Plaintiff argues that his First Amendment right was violated because under *Ex Parte Garcia*,[12] "Bittakis had a protected right to be taken before a magistrate with an opportunity to talk the [sic] magistrate before having probable cause determined and a bond set" and "was denied his right to explain the circumstances to a magistrate that the 'white powdery substance' was laundry soap."[13] However, *Ex parte Garcia* does not stand for the proposition that an arrested person has a right to "explain the circumstances to a magistrate." Setting aside the fact that *Garcia* addresses only Texas law, *Garcia* was a state habeas ac-

---

9. Pl.'s Am. Compl., Rec. No. 2, pp. 2–3.

10. The Court notes that the following sentence from one of Plaintiff's own responses clarifies that Plaintiff does not wish to invoke the Eighth Amendment: "Plaintiff is not asserting an Eighth Amendment claim. There is an inadvertent reference to the Eighth Amendment reference [sic] on page 53, § 227 in his Amended Complaint." Pl. Bittakis' Resp. to Def.'s Mot. for Summ. J., Rec. No. 97, p. 7.

11. Plaintiff only refers to the First Amendment in one sentence of his sixty-page Amended Complaint and does not further cite any arguments or factual assertions dealing with the First Amendment. *See* Pl.'s Am. Compl.,

Rec. No. 13, p. 3. In addition to the fact that Plaintiff only makes one brief reference, it is unclear to the Court whether Plaintiff actually desires to maintain a cause of action under the First Amendment. In the Amended Complaint, the section entitled "Violations of 42 U.S.C.1983" fails mention the First Amendment whatsoever. *See* Pl.'s Am. Compl., Rec. No. 13, p. 53–54. As there are no "well pleaded factual allegations," this Court finds that Plaintiff cannot state a claim under any First Amendment legal theory. *See Tuchman*, 14 F.3d at 1067.

12. 547 S.W.2d 271 (Tex.Crim.App.1977).

13. Pl. Bittakis' Resp. to Def.'s Motion for Summ. J., Rec. No. 97 p. 6.

tion examining the amount of probable cause required for the defendant's continued detention. *Garcia* thus has no application to Plaintiff's First Amendment claim. Further, nowhere in his Complaint does Plaintiff allege that any Defendant interfered with his speech in any way or identify any adverse action taken against him because he engaged in a protected exercise of speech. Accordingly, Plaintiff fails to state a claim for a violation of his First Amendment rights.

■ The Court also finds Plaintiff fails to state a claim with regard to any Fifth Amendment right.[14] "The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir.2000). Plaintiff does not allege that any of the Defendants "were acting under authority of the federal government." *See id.* As none of the Defendants in the instant action are federal actors, it is clear that Plaintiff cannot state an actionable Fifth Amendment claim.[15]

■■ The Court next turns to Plaintiff's Sixth Amendment claim. While the Sixth Amendment provides the accused the right "to be informed of the nature and cause of the accusation" against him, the Sixth Amendment's protection "does not come into play until the government has committed itself to prosecution." *Kladis v. Brezek*, 823 F.2d 1014, 1018 (7th Cir. 1987). Plaintiff's claims fail, as he has not set forth factual allegations suggesting Defendants' conduct did not meet the Sixth Amendment's requirements. Furthermore, Plaintiff's responses do not address Defendant's arguments and wholly fail to provide any factual assertions in support of his Sixth Amendment claim.

After carefully reviewing Plaintiff's Complaint, the Court understands Plaintiff's primary argument to be that DIMS denied Plaintiff equal protection of the law and due process in two respects. First, it deprived Plaintiff of his right to a prompt determination of probable cause by a neutral and detached magistrate. Second, DIMS violated Plaintiff's right to have a neutral and detached magistrate fix the amount of his bail.

■ The Fourth Amendment requires "a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 125, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). The Supreme Court later refined its holding in *Gerstein*, explaining "a jurisdiction that provides judicial determination of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement" demanded by the Fourth Amendment. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). In addition, "the Fourth Amendment does not compel an immediate determination of probable cause upon completion of administrative steps incident to arrest." *Id.* Further, "the Constitution does not require an adversary determination of probable cause." *Gerstein*, 420 U.S. at 123, 95 S.Ct. 854.

■ Here, it is uncontested that Plaintiff was arrested without a warrant and presented to a magistrate within 48 hours of his arrest. On January 31, 2005, the day after Plaintiff's arrest, Magistrate James Carter made a neutral and de-

---

**14.** Plaintiff only refers to the Fifth Amendment twice in his sixty-page Amended Complaint. *See* Pl.'s Am. Compl., Rec. No. 2, p. 3; 53. In addition, no arguments or factual assertions dealing with the Fifth Amendment appear in the Complaint.

**15.** The Court notes Plaintiff's due process claims under the Fourteenth Amendment are addressed later in this section.

tached judicial determination of probable cause. The "Certificate of Magistrate," which is a record of the proceeding, stipulates that "probable cause was found." [16] Further, Defendants assert Magistrate Carter informed Plaintiff of his rights and the charges against him and reviewed and approved the bond set by the arresting officer.[17] Plaintiff's version of the facts, however, place Magistrate Carter's thoroughness in doubt. After being presented to Magistrate Carter, Plaintiff claims:

> the judge mumbled something to the effect, "Mark Bittakis, you have been charged with a felony for possession of a controlled substance, $\geq 200G > 400G$," and that was that. This was the first time Bittakis had been told what charges had been filed against him. No pleading innocent or guilty, no discussion of bail reduction, nothing. "Bittakis did not have the opportunity to say anything, or even stand up or appear before the bench". [sic] Bittakis basically just sat there while the magistrate mumbled.[18]

Assuming, as this Court is required to do, Plaintiff's version of the facts as true, the Magistrate did not follow the clear mandate of Article 15.17 of the Texas Code of Criminal Procedure. Article 15.17 requires the following: "The magistrate shall inform in clear language the person arrested, either in person or through the electronic broadcast system, of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys representing the state, of his right to terminate the interview at any time, and of his right to have an examining trial." TEX.

CODE OF CRIM. PROC. ANN. art. 15.17(a) (Vernon 2005). According to Plaintiff's version of the facts, this did not happen. However, this alleged state law violation does not give rise to liability under § 1983 against any Defendant in this case. Further, there is no evidence of an unreasonable delay in the judicial determination of probable cause. Therefore, Plaintiff's claim that DIMS violated his right to prompt presentation before a magistrate fails to establish a violation of a constitutional right.

 Insofar as Plaintiff asserts a violation of his Fourteenth Amendment right to "equal protection of the laws," the Court finds that Plaintiff also fails to state a claim. The Fourteenth Amendment's Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a directive to treat all similarly situated persons alike. *City of Cleburne v. Cleburne Living Ctr.* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (*citing Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). Here, Plaintiff does not claim or otherwise provide any facts to support a finding that he belongs to any specific protected class or has been treated differently from any other class of people.

To the extent Plaintiff complains that Defendants violated his right to due process because a neutral and detached magistrate did not set his bail, Plaintiff similarly fails to state a claim. Plaintiff has failed to direct the Court to any precedent stating the United States Constitution requires a particular individual to fix the amount of bail; because the Constitution *does not.*

---

**16.** Def. City of El Paso's Mot. for Summ. J., Rec. No. 124, Ex. C.

**17.** Def. City of El Paso's Mot. for Summ. J., Rec. No. 124, Ex. C.

**18.** Pl.'s Am. Compl., Rec. No. 2, pp. 16–17.

Article III of the United States Constitution defines and describes the judicial power of the United States. There is nothing in that Article which assigns the bail granting and fixing function to the courts. Generally, in the absence of a constitutional provision, the Legislature has the power define the jurisdiction and powers of the courts. 48 C.J.S. Judges § 40 at 1005. That is also true with respect to bail. *See, e.g.,* 18 U.S.C. § 3141.

*In re Floyd,* 413 F.Supp. 574 (D.Nev.1976).

▇ In the case at bar, Plaintiff's bail was set by a pre-existing schedule. While there is little case law dealing with the federal constitutionality of non-judicial fixing of bail, the State of Texas, among other states,[19] allows persons other than a neutral and detached magistrate to set bail. In Texas, individuals allowed to set bail include police officers, in various situations. *See* TEX.CRIM. PROC.CODE §§ 17.20; 17.22. As previously addressed, Plaintiff's asserting a cause of action under § 1983 must show deprivation of a federal right, not a right under state law. Here, Plaintiff has made no showing that he enjoys a federally-protected right to have only a neutral and detached magistrate set bail. Accordingly, Plaintiff fails to state a cognizable claim under § 1983.

▇ As to Esparza, Plaintiff has failed to plead facts which, if true, establish that Esparza was personally involved in any of the alleged constitutional violations. Plaintiff has not pleaded any acts or omissions by Esparza that would show his personal involvement in the constitutional injuries Plaintiff allegedly suffered. Esparza's only connection to the case revolves around his involvement in the implementation and management of the DIMS program. Insofar as Plaintiff alleges DIMS was the moving force behind the alleged due process/Fourteenth Amendment violations, as the Court has previously discussed, it finds that Plaintiff has not set forth a facially valid claim for a due process violation.

In sum, viewed in the light most favorable to the Plaintiff and with every doubt resolved in his favor, the Court finds Plaintiff's § 1983 claims should be dismissed. In the alternative, as discussed below, even if the Court were to find that Plaintiff states a cognizable claim under § 1983, it would nonetheless conclude that Esparza and the officers are entitled to the defenses of qualified immunity and prosecutorial immunity and that finding municipal liability is inappropriate.

B. *Section 1983 Claims Against Esparza and the Officers, in their Individual Capacities*

1. Esparza and the Officers' Qualified Immunity Defense

As noted, the Court finds that even if Plaintiff has stated a colorable § 1983

---

19. Connecticut is one such state. In *Clynch v. Chapman,* the plaintiff alleged that the defendant police officers violated the Eighth Amendment's excessive bail clause by imposing a bond in accordance with the "Police Departmental standard operating procedure for the sum that is automatically required as bond for DUI arrest." 285 F.Supp.2d 213, 219 (D.Conn.2003). Plaintiff contended the procedure violated the Eighth Amendment because the imposed bond was calculated without assessing individualized factors, including Plaintiff's lifelong residence in the town and lack of a criminal record. *Id.* at 219–20. The District Court concluded that the officers were absolutely immune from § 1983 actions "related to performing the bail setting function assigned to Connecticut police officers under Conn. Gen.Stat. § 54–63c." *Id.* at 220. The court further held that "even if the police department's policy of automatic bail is at variance with Conn. Gen. Stat § 54–63c(a), the general function of setting bail was within [the defendant officer's] statutory authority." *Id.* at 221–22.

claim against Esparza and the Officers, the Court nevertheless dismisses Plaintiff's § 1983 claim because Esparza and the Officers have shown they are entitled to qualified immunity.

### a. Qualified Immunity Standard

■ Public officials performing discretionary functions are generally shielded from suit unless a plaintiff shows by specific allegations that the officials violated clearly established statutory or constitutional rights of which reasonable individuals would be aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 816, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Schultea v. Wood*, 47 F.3d 1427, 1431 (5th Cir.1995); *Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir. 1987). When defendants claim qualified immunity, a court must first determine whether the plaintiffs have alleged a violation of a clearly established constitutional right. *Williams v. Bramer*, 180 F.3d 699, 702 (5th Cir.1999) (citing *Siegert v. Gilley*, 500 U.S. 226, 231–32, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). Next, the court must decide whether the right was clearly established when the alleged violation occurred. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Finally, the court must determine whether the record shows a violation actually occurred or at least gives rise to a genuine issue of material fact regarding whether the conduct violated a clearly established right. *Morris v. Dearborne*, 181 F.3d 657, 665 (5th Cir.1999). If the Court determines the official's conduct was unconstitutional, then it must also decide whether the conduct was nonetheless "objectively reasonable." *Williams v. Bramer*, 180 F.3d 699, 702 (5th Cir.1999) (citing *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

■ Qualified immunity is designed to avoid the "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Harlow*, 457 U.S. at 816, 102 S.Ct. 2727; *Lion Boulos*, 834 F.2d at 507. This limited form of immunity applies only to claims seeking "to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Thus, if successfully established, the defense of qualified immunity requires a court to dismiss the pertinent claims against officials in their individual capacity. *Id.*

### b. Qualified Immunity Analysis

Viewed in the light most favorable to the Plaintiff and with every doubt resolved in his favor, the Court finds it should dismiss Plaintiff's claims against Esparza and the officers as they are entitled to qualified immunity.

■ As to Esparza, Plaintiff fails step one of the qualified immunity analysis, because, as previously discussed, Plaintiff fails to allege any facts showing that Esparza violated clearly established constitutional rights. Even assuming, *arguendo*, that Plaintiff has established a violation of a clearly established federal constitutional right, the Court finds that Esparza's conduct was objectively reasonable. *See, e.g., Gutierrez v. City of San Antonio*, 139 F.3d 441, 445 (5th Cir.1998) (holding a defendant may invoke a qualified immunity defense if his conduct was objectively reasonable—even if the conduct infringed upon the plaintiff's constitutional rights). Plaintiff has failed to plead any facts that would show Esparza's actions were unreasonable. The Fifth Circuit has recognized that "the qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"

*Mangieri v. Clifton,* 29 F.3d 1012, 1017 (5th Cir.1994) (quoting *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

It is undisputed that DIMS requires arrestees who are not freed on bond appear to before a magistrate within 48 hours. Under the then current state of the law, this procedure was reasonable. *See County of Riverside v. McLaughlin,* 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991); *see also In re Floyd,* 413 F.Supp. 574 (D.Nev.1976)(holding a similar practice reasonable). Our Circuit mandates that the reasonableness inquiry be decided with reference to the law as it existed at the time of the conduct in question. *King v. Chide,* 974 F.2d 653, 656–57 (5th Cir.1992). Accordingly, this Court finds as a matter of law Esparza is immune from liability under the doctrine of qualified immunity.

 As to the officers, Plaintiff claims they unlawfully arrested him in violation of his Fourth and Fourteenth Amendment rights. The right to be free from an illegal arrest is clearly established. *Sorenson v. Ferrie,* 134 F.3d 325, 328 (5th Cir.1998). "Whether an arrest is illegal, however, hinges on the absence of probable cause. Thus, if [Plaintiff] cannot show that the officers lacked probable cause, [ ]he has failed to state the violation of a constitutional right, and the officers are entitled to qualified immunity." *Id.* Qualified immunity for the officers turns on whether "a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the ... officers possessed. Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Id.* at 477 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). Where there is an arrest without a warrant, "probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine,* 80 F.3d 129, 132 (5th Cir.1996). "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released." *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

 Here, it is clear that the officers had probable cause, as defined under federal law, to conclude that Plaintiff had committed a crime. The officers reasonably possessed probable cause to believe the bags of a white powdery substance were an illicit substance. Officers Chew, Nevarez, and Canonizado responded to a call from the TSA supervisor at the American Airlines baggage area in reference to a suspected prohibited item. Chew first performed a field test on the white powdery substance, which produced a positive result of cocaine. Chew then advised Plaintiff of the test results and observed his demeanor. After a second test of the substance returned a positive result for cocaine, the officers arrested Plaintiff. Chew presumed from his participation in previous narcotics arrests and from Plaintiff's behavior that the substance could be cocaine, which is clearly a controlled substance.

 The fact that the white powdery substance was later found to be laundry detergent is not determinative, because the Court looks to "whether at that moment the facts and circumstances within [the officers'] knowledge and of which [they] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [Plaintiff] had committed or was committing an offense."

*See Babb v. Dorman,* 33 F.3d. 472, 479 (5th Cir.1994). However, at the very least, "officers of reasonable competence could disagree on this issue," therefore qualified immunity should be recognized. *See id.*

Because the Court finds the officers had probable cause to believe Plaintiff possessed an illegal narcotic, Plaintiff has failed to allege a constitutional violation. A careful review of Plaintiff's factually detailed Complaint compels the Court to conclude that these Defendants' conduct was at all times objectively reasonable. Nowhere does Plaintiff allege any facts that could be construed as objectively unreasonable. Accordingly, the officers are entitled to qualified immunity.

2. Esparza's Prosecutorial Immunity Defense

Esparza also moves to dismiss Plaintiff's various claims against him on the basis of absolute prosecutorial immunity. Even if the Court were to find Plaintiff states a claim under § 1983 against Esparza or that he is not entitled to qualified immunity, the Court finds Plaintiff's § 1983 claims against Esparza, in his individual capacity, should be dismissed because he is entitled to absolute prosecutorial immunity.

a. Prosecutorial Immunity Standard

▮▮▮▮ "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *see also Brummett v. Camble,* 946 F.2d 1178, 1181 (5th Cir.1991) (holding "prosecutors are absolutely immune from liability under § 1983 for their conduct 'in initiating a prosecution and in presenting the State's case,' because that conduct is 'intimately

associated with the judicial phase of the criminal process.' ") (citations omitted). Prosecutors are not entitled to absolute immunity, however, when performing administrative or investigative functions. *Buckley,* 509 U.S. at 273, 113 S.Ct. 2606.

In *Burns v. Reed,* the Supreme Court held that absolute prosecutorial immunity extends to a prosecutor's participation in a probable cause hearing, but did not extend the doctrine of prosecutorial immunity to the prosecutor's giving of "legal advice." 500 U.S. 478, 491–95, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). In that case, police investigating a domestic shooting suspected the plaintiff of having multiple personalities. *Id.* at 482–83, 111 S.Ct. 1934. The officers thought interviewing the plaintiff under hypnosis would aid their investigation, but were concerned with the propriety of using hypnosis as an investigative technique. *Id.* The officers therefore consulted a prosecutor, who told them hypnosis was legally acceptable. *Id.* The plaintiff filed a § 1983 claim contending that the prosecutor had elicited false testimony to obtain a search warrant at a probable cause judicial hearing and also supplied the police officers erroneous advice regarding the use of hypnosis. *Id.* at 484, 111 S.Ct. 1934. The Court held that the prosecutorial immunity doctrine should apply to the prosecutor's participation in the probable cause hearing because it was "intimately associated with the judicial phase of the criminal process." *Id.* at 493, 111 S.Ct. 1934. However, the Court was unable to identify a historical basis upon which to extend the doctrine of absolute immunity for the giving of legal advice, holding that "advising the police in the investigative phase of a criminal case" is not "so intimately associated with the judicial phase of the criminal process" as to quality for prosecutorial immunity. *Id.*

### b. Prosecutorial Immunity Analysis

Plaintiff attempts to overcome Esparza's prosecutorial immunity defense by alleging "[u]sing the DIMS scheme, District Attorney Jaime Esparza is micromanaging the EPPD concerning the arrests and booking arrestees like Plaintiff into the jail which is not a prosecutorial function."[20] Further, Plaintiff avers that DIMS is requiring assistant district attorneys to set bond, thus assuming the role of the magistrate.[21]

█ The Court finds Plaintiff does not plead facts suggesting that Esparza's actions in subjecting the Plaintiff to the DIMS program were taken outside of his role as district attorney for El Paso County. Rather, Plaintiff's allegations against Esparza arise from the fact of his arrest, detention, and prosecution. Plaintiff further fails to plead any facts which would show Esparza was personally involved in any of the alleged constitutional violations.

Even assuming the Court could recognize Esparza's personal involvement in Plaintiff's criminal proceedings, Esparza is also entitled to prosecutorial immunity. Unlike the prosecutor in *Burns* who advised the officers regarding an investigative function, the officers in the instant case sought a charging decision and a bail amount from the DIMS attorney. Acting in her "role as advocate for the State," Clausen simply supplied the District Attorney Office's decision whether to charge the Plaintiff and a bail amount. In addition, the "legal advice" in *Burns* occurred before the suspect's arrest. *Burns*, 500 U.S. at 492, 111 S.Ct. 1934. Here, the DIMS attorney communicated with the officers after the arrest regarding "preparing for the initiation of judicial proceedings or for

trial." *See Buckley*, 509 U.S. at 273, 113 S.Ct. 2606. Accordingly, neither Clausen nor Esparza supplied "legal advice" as described in *Burns*. *See Burns*, 500 U.S. at 492–94, 111 S.Ct. 1934. Esparza's actions as the District Attorney were, like those of previously dismissed Defendant Clausen, central to the task of initiating a prosecution against Plaintiff. Accordingly, the doctrine of absolute prosecutorial immunity protects Esparza's actions and he is therefore entitled to dismissal of all Plaintiff's § 1983 claims against him.

### C. Section 1983 Claims Against the City, County and Esparza, in his Official Capacity

#### 1. Preliminary Matters

█ Pursuant to 42 U.S.C. § 1983, Plaintiff brings an action for relief for alleged violations of his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights against Esparza in his official capacity. A court should treat a suit against a governmental employee in his official capacity as a suit against the entity itself. *Ky. Bureau of State Police v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Here, Plaintiff has named the City and County as Defendants and seems to assert the same claims against the City and County as he does against Esparza. Accordingly, the Court will treat Plaintiff's claims against Esparza in his official capacity as claims against the County.

#### 2. Municipal Liability Pursuant to 42 U.S.C. § 1983

█ In *Monell v. New York City Dept. of Social Servs.*, the Supreme Court

---

20. Pl.'s Resp. to Def.s' County of El Paso and Jaime Esparza, In his Official And Individual Capacity, Amended Mot. to Dismiss, or in the Alternative, Mot. for Summ. J., Rec. No. 141, p. 13.

21. Pl.'s Resp. to Def.s' County of El Paso and Jaime Esparza, In his Official And Individual Capacity, Amended Mot. to Dismiss, or in the Alternative, Mot. for Summ. J., Rec. No. 141, p. 13–16.

recognized municipal liability under § 1983 where the execution of a municipal policy or custom inflicts a constitutional deprivation. 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In recognizing the potential for municipal liability under § 1983, the Court made it clear that a municipality may only be held liable when an action taken pursuant to official municipal policy or custom caused the constitutional violation. *Id.; see also Collins v. City of Harker Heights,* 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). A "municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell,* 436 U.S. at 691, 98 S.Ct. 2018. "Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights." *Bd. of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 415, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

In order to hold a governmental entity liable for the acts of a nonpolicymaking employee, the plaintiff must allege and prove that: "(1) a policy or custom existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation." *Meadowbriar Home For Children, Inc. v. Gunn,* 81 F.3d 521, 532–33 (5th Cir.1996). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bryan County,* 520 U.S. at 405, 117 S.Ct. 1382 (citing *City of Canton,* 489 U.S. 378, 391–92, 109 S.Ct.

1197, 103 L.Ed.2d 412 (1989)). "Under certain circumstances, however, a municipality may incur § 1983 liability for its employees' acts when a municipal policy of hiring or training causes those acts." *Benavides v. County of Wilson,* 955 F.2d 968, 972 (5th Cir.1992). To establish a cause of action under § 1983 for a hiring or training deficiency, a plaintiff must show: (1) the training or hiring procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy; and (3) the inadequate hiring or training policy directly caused the plaintiff's injury. *See City of Canton,* 489 U.S. at 385–87, 109 S.Ct. 1197; *Benavides,* 955 F.2d at 972.

In sum, when analyzing a § 1983 claim against a municipality, the Court must first decide if the defendant promulgated "an official policy, practice, or custom" which could subject it to § 1983 liability. *Monell,* 436 U.S. at 690–94, 98 S.Ct. 2018. "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001). Moreover, when proceeding under § 1983, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff." *Id.*

The Fifth Circuit has defined "official policy or custom" as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so

common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore,* 958 F.2d 92, 94 (5th Cir.1992) (quoting *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985)). Wrongful conduct by an officer lacking policymaking authority cannot be considered a municipal "policy." *See Collins v. City of Harker Heights,* 503 U.S. 115, 121, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

■■■ The Court's first inquiry is whether Plaintiff has established the existence of an official policy or custom under either theory set forth by the Fifth Circuit that caused a constitutional violation. Here, aside from identifying DIMS, Plaintiff does not allege facts which taken as true would support a finding that an official policy or custom caused the Plaintiff's alleged constitutional violations. While Plaintiff discusses several citizen complaints against the El Paso Police Department, he fails to explain how these relate whatsoever to the facts at issue.[22] Plaintiff has pleaded no facts exhibiting a pattern of similar instances in which other individuals were injured as he claims he was. Plaintiff has not produced any evidence of inadequacy of training by the municipalities. Further, Plaintiff fails to present sufficient allegations that the City or County's failure to train, if any, rose to the level of deliberate indifference to the rights of those arrested by EPPD. Accordingly, the Court finds that Plaintiff has not established the existence of an official policy or custom, aside from DIMS, that caused constitutional violations.

■■■ As to DIMS, assuming, Plaintiff could establish that Defendant promulgated an "official policy" or "custom," the Court would then need to determine whether that policy could be tied to a constitutional violation. In addition to the other elements, Plaintiff must show a direct, causal link between a municipal policy and the constitutional deprivations. *City of Canton,* 489 U.S. at 385, 109 S.Ct. 1197. "It is only when the 'execution of the government's policy or custom ... inflicts the injury that the municipality may be held liable under § 1983." *Id.* (citations omitted). The Supreme Court has held:

[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Brown,* 520 U.S. at 404, 117 S.Ct. 1382.

■■■ Here, Plaintiff cannot establish that DIMS is the moving force for any of

---

**22.** The following is an example of a citizen complaint included in Plaintiff's Amended Complaint:

May 16, 2003: State Representative Joe Pickett wanted to know why EPPD officers treated him like a "common criminal." Pickett's 17–year–old daughter was home alone when police arrived. The daughter said "They scared the holy-hell out of her." They characterized her father as "a fugi-

tive" and wanted to know his whereabouts. When the daughter went to call her mother, the EPPD officers "came all the way into the house". They entered Pickett's house with no warrant, knowing that he was not a criminal. He wanted to know why the El Paso Police Department treated him like a common criminal.

Pl.'s Am. Compl., Rec. No. 2, p. 46.

the alleged constitutional violations. The Plaintiff has failed to produce any evidence of a constitutional deprivation. There is no evidence that DIMS or any other policy was a direct causal link to Plaintiff's alleged constitutional injuries. *See Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (holding Plaintiff cannot hold County liable solely because it employs a tortfeasor.). Even assuming Magistrate Carter's alleged lack of compliance with Article 15.17 of the Texas Code of Criminal Procedure, it was not brought about by the DIMS program policies and procedures. Because Plaintiff fails to show that DIMS was the moving force behind a constitutional rights violation, Plaintiff's § 1983 claims against Esparza in his official capacity, the City, and County should also be dismissed.

### C. *Section 1985 and 1986 Claims*

 Regarding Plaintiff's § 1985 claims against the Defendants, the Court understands Plaintiff to argue that through DIMS, the City, County, Esparza, Assistant District Attorneys, and the El Paso Police Department have conspired in some manner to obstruct justice by depriving Plaintiff of his constitutional rights. Defendants move to dismiss Plaintiff's § 1985 claims, contending Plaintiff does not identify a class within the meaning of § 1985 nor any act by Defendants which would reasonably have been made in furtherance of a conspiracy. Defendants additionally contend that Plaintiff does not identify any racially-based animus. Although it is not clear from the Amended Complaint which subsection of § 1985 Plaintiff wishes to apply to this action,

Plaintiff appears to pursue his claim under § 1985(2).[23] Under 42 U.S.C. § 1985(2), a civil conspiracy exists:

> if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

In sum, a civil conspiracy claim pursuant to § 1985(2) requires a showing that: a) two or more persons conspired to obstruct justice in a state court proceeding, and b) race or class-based animus motivated the conspirators. *Daigle v. Gulf State Utilities Co.,* 794 F.2d 974, 979 (5th Cir.1986). In *Griffin v. Breckenridge,* the Supreme Court interpreted § 1985's statutory language requiring "intent to deprive one of equal protection of the laws" to mean that some racial or otherwise class-based discriminatory animus must drive the conspirators' actions. 403 U.S. 88, 91, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The Fifth Circuit applied the *Griffin* rationale to claims under § 1985(2), as that part of the statute also refers to equal protection of the laws. *See Bradt v. Smith,* 634 F.2d 796, 801 (5th Cir.1981).

 Rather than attempt to establish the necessary elements of a civil conspiracy claim under § 1985(2), Plaintiff merely argues that "[t]he Defendant's [sic] were trained under Texas law, U.S. Consitution [sic] and the Fourth Amendment. [ ] Defendants had the power to prevent

---

**23.** Previous responses by the Plaintiff contain the following averment: "The plaintiff states a claim because the second clause of section 1985(2) contains language that the conspirators' actions are motivated by an intent to deprive their victims of the equal protection of the laws." *See, e.g.,* Pl.'s Resp. to Def. County of El Paso and Jaime Esparza, in his Official Capacity, Mot. to Dismiss, Rec. No. 31, p. 5.

conspiracies to commit wrongs. The DIMS Interlocal Agreement and implementation is in essence a conspiracy to deprive all persons arrested without a warrant in the City of El Paso and portions of El Paso County of their rights under Texas law, Constitutional rights, due process of law and equal protection of the law, which severely affected and damaged Mark Bittakis." [24] However, "all persons arrested without a warrant" is not a cognizable class existing independently of the actions Plaintiff attributes to Defendants. *See Hamill v. Wright,* 870 F.2d 1032, 1038 (5th Cir.1989) (holding § 1985 does not protect a class which exists only because its members are treated similarly by the defendants). The Court finds Plaintiff fails to sufficiently plead any acts by the Defendants which could be viewed as a conspiracy or allege that Defendants were motivated by a racial or class-based animus. In sum, viewed in the light most favorable to Plaintiff and with every doubt resolved in his favor, the Court finds Plaintiff has failed to state a claim upon which relief can be granted with regard to Plaintiff's conspiracy claims against the Defendants.

■■■ Section 1986 creates a cause of action against those who know of, and have the power to prevent, conspiracies to commit the wrongs described in § 1985. 42 U.S.C. § 1986. Since Plaintiff fails to state a claim upon which relief can be granted pursuant to § 1985, he similarly fails to state a claim under § 1986. *See, e.g., Hamilton v. Chaffin,* 506 F.2d 904, 914 (5th Cir.1975) ("Because of this failure to state a claim cognizable under Section 1985(3), appellant may not recover under the interrelated, dependent cause of action under Section 1986, action for neglecting

to prevent a known conspiracy under Section 1985.").

### D. RICO Claims

■■■ Plaintiff purports to make a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), arguing Defendants have somehow engaged in the conduct of an enterprise through a pattern of racketeering activity by utilizing DIMS. RICO provides civil liability for individuals engaged in "a pattern of racketeering activity." 18 U.S.C. § 1962(a)-(d). In order to establish a RICO claim, the Plaintiff must establish the existence of: "(1) a person who engages in (2) a *pattern of racketeering activity* [which is] (3) connected to the acquisition, establishment, conduct, or control of an *enterprise.*" *Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 855 F.2d 241, 242 (5th Cir.1988) (emphasis in original). To establish the enterprise element of a RICO claim, a plaintiff must "show evidence of an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit." *Atkinson v. Anadarko Bank and Trust Co.,* 808 F.2d 438, 440 (5th Cir.1987). The enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Id.* at 441 (citations omitted). "To avoid dismissal for failure to state a claim, a plaintiff must plead specific facts ... which establish the existence of an enterprise." *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir.1989).

■■■ Defendants contend the Court should dismiss Plaintiff's RICO claims because "Plaintiff has failed to allege the underlying predicate facts which would establish an enterprise within the meaning of the statute." [25] Plaintiff's replies include

---

24. Pl. Bittakis' Resp. to Def.'s Mot. for Summ. J., Rec. No. 97, p. 5.

25. Def.s' County of El Paso and Jaime Esparza, In his Official and Individual Capacity,

no factual assertions on this point, nor does Plaintiff direct the Court to any factual assertions in his Amended Complaint regarding his RICO claims. Instead, Plaintiff merely cites case law discussing the leniency the Court should afford RICO claims at the pleading stage of litigation.[26] For these reasons, the Court finds Plaintiff has failed to plead any facts which would establish the conduct of an enterprise, a meeting of the minds, an intent to conspire, or any pattern of racketeering activity. Plaintiff also does not allege that any of the Defendants were associated in any manner with one another apart from their responsibilities at the District Attorney's Office. Further, although Plaintiff does not specifically argue the point, the Court also finds DIMS cannot be considered "an entity separate and apart" from the District Attorney's Office. *See Atkinson*, 808 F.2d at 440. Plaintiff wholly fails to explain how the RICO statute applies to the facts he alleges. Accordingly, viewed in the light most favorable to the Plaintiff and with every doubt resolved in his favor, the Court finds Plaintiff has failed to state a claim upon which relief can be granted regarding to his RICO claims against the Defendants.

### E. State Law Claims

▆▆▆ In addition to the federal claims, Plaintiff alleges multiple state law claims against the Defendants.[27]

> [I]n any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy

under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Pursuant to 28 U.S.C. § 1367(c), the Court *may* decline to exercise supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially dominates the claims over which the court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, where there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). When a district court has dismissed all federal claims from a cause prior to trial, the general rule in the Fifth Circuit is for the federal court to decline to exercise jurisdiction over supplemental state law claims. *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (1999). However, the rule is "neither mandatory nor absolute." *Id.* In determining whether to retain jurisdiction over the state law claims, the court should consider the provisions of 28 U.S.C. § 1367(c) as well as issues of judicial economy, convenience, fairness, and comity. *Id.*

▆▆ The Court finds this case does not present any novel or complex issues of state law and there are no "exceptional circumstances" compelling the Court to decline jurisdiction. Having considered § 1367(c) and the interests of judicial economy, convenience, fairness, and comity, the Court finds that justice will best be served by retaining jurisdiction over Plaintiff's state law claims. The Court is intimately familiar with the parties and issues presented in the cause.

---

26. *See, e.g.,* Pl. Bittakis' Resp. to Def.'s Mot. for Summ. J., Rec. No. 97, p. 4.

Amended Mot. to Dismiss, or in the Alternative, Mot. for Summ. J., Rec. No. 121, p. 24.

27. The Court again notes that state tort claims are not actionable under § 1983. *Nesmith v. Taylor*, 715 F.2d 194, 195 (5th Cir. 1983).

■ Having resolved the issue of its supplemental jurisdiction over Plaintiff's state law claims, the Court now considers the parties' arguments regarding the alleged state law violations. Defendants argue that Plaintiff's state law claims should be dismissed because nowhere in his Complaint does Plaintiff allege, nor can he, that the State has consented to suit for false arrest/imprisonment or intentional infliction of emotional distress. Under Texas law, the State and its governmental units are immune from suit absent a statute or express legislative permission. *See Texas Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638–39 (Tex.1999). The Texas Tort Claims Act ("TTCA") waives immunity for three types of claims: (1) claims arising from the operation or use of motor-driven vehicles or equipment; (2) claims caused by a condition or use of tangible personal or real property; and (3) claims arising from premise defects. TEX. CIV. PRAC. & REM.CODE §§ 101.021; 101.022. The TTCA does not waive immunity with respect to claims *"arising out of* assault, battery, false imprisonment, or any other intentional tort." *Id.* §§ 101.021; 101.057 (emphasis added).

> Persons sued in their official capacity may raise any defense available to the governmental unit, including sovereign immunity. ... An individual sued in an official capacity may enjoy the protections of sovereign immunity to the same extent as those protections are available to the person's employer and thus, if the governmental unit would be immune due to sovereign immunity, so is the governmental official sued in his official capacity.

*Nueces County v. Ferguson,* 97 S.W.3d 205, 214–15 (Tex.App.-Corpus Christi 2002, no pet.) (citations omitted). Here, none of Plaintiff's state law tort claims fall into the category for which the TTCA waives immunity. Accordingly, the Court will dismiss Plaintiff's state law claims against the City, County, and Esparza and the officers in their official capacities, based on governmental immunity.

■ Under Texas law, absolute prosecutorial immunity is an affirmative defense for which "Texas courts follow federal jurisprudence and apply the functional approach of *Imbler v. Pachtman.*" *Clawson v. Wharton County,* 941 S.W.2d 267, 271 (Tex.App.-Corpus Christi 1996, writ denied). Having previously found in this Memorandum Opinion and Order that Esparza is entitled to prosecutorial immunity under federal law because his actions were all intimately involved in the judicial phase of the criminal process, the Court finds Esparza is entitled to prosecutorial immunity with respect to the state law claims against him in his individual capacity.

Further, insofar as Plaintiff seems to invoke the Texas Constitution, he is not specific regarding any provision of the State constitution Defendants allegedly violated. Defendants thus argue Plaintiff does not allege violation of any specific state constitutional provisions and has not shown any right to sue for monetary damages specifically enunciated in any provision. "Therefore any claims Plaintiff is making under the Texas Constitution should be dismissed."[28] The Court agrees and finds Plaintiff has failed to state a claim for a violation of a state constitutional or statutory right. *See Brown v. De La Cruz,* 156 S.W.3d 560, 567 (Tex.2004) (holding that the Legislature must clearly

---

28. Defs.' County of El Paso and Jaime Esparza, In his Official and Individual Capacity, Amended Mot. to Dismiss, or in the Alternative, Mot. for Summ. J., Rec. No. 121, p. 25.

grant private standing to bring an action for violation of a statute).

■ Even though the Court dismisses Plaintiff's state law claims pursuant to the doctrines of governmental immunity and prosecutorial immunity, the Court alternatively notes that Plaintiff seeks damages for the Texas tort of intentional infliction of emotional distress. However, he is clearly not entitled to relief because the Texas Supreme Court has held that, where the gravamen of a plaintiff's complaint is actually another tort, such as a constitutional civil rights violation or false imprisonment, a cause of action for intentional infliction of emotional distress is not available. *Hoffmann–La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447–48 (Tex. 2004). Because Plaintiff's claims against Defendants for intentional infliction of emotional distress are based on the same operative facts as his claims against those Defendants for alleged civil rights violations, Plaintiff cannot pursue his intentional infliction of emotional distress claims.

For the reasons discussed above, the Court dismisses all of Plaintiff's state law claims against all Defendants.

### F. *Declaratory and Injunctive Relief*

As this Memorandum Opinion and Order dismisses all of Plaintiff's claims against all Defendants, no case or controversy exists between the parties. Accordingly, there is no basis for Plaintiff's requests for declaratory and injunctive relief and the Court therefore denies them.

### III. CONCLUSION

For the reasons it has discussed, the Court finds it appropriate to grant Defendants the relief they request. The Court accordingly enters the following orders:

**IT IS THEREFORE ORDERED** that "Defendant's Motion for Summary Judgment" [Rec. No. 90] is **GRANTED**.

**IT IS FURTHER ORDERED** that "Defendants' County of El Paso and Jaime Esparza, In his Official and Individual Capacity, Amended Motion to Dismiss, or in the alternative, Motion for Summary Judgment" [Rec. No. 121] is **GRANTED**.

**IT IS FURTHER ORDERED** that "Defendant City of El Paso's Motion for Summary Judgment" [Rec. No. 124] is **GRANTED**.